SCVNGR, Inc. Our next case is number 14-1708, Barron v. SCVNGR, Inc., Mr. Fein. Good morning. May it please the Court, David Fein for the appellant, Mr. Barron, who is the inventor of Patent 873. With the Court's permission, I'll preserve three minutes for rebuttal. The single issue before the Court is whether it was error for the District Court to find an undisputed fact that a cell phone with a level-up application is not a transaction terminal. In and of itself? Is not one... Is your contention that the phone in and of itself is a transaction terminal? No, Your Honor. No. The contention is that the cell phone, the level-up scanner, and the merchant point-of-sale are the three devices that combined form the transaction terminal as contemplated by the patent. Well, how does that impose liability on SCVNGR? The idea that they're inducing infringement? Who's infringing? The allegation is that the method that SCVNGR employed... Who's infringing the method? Level-up is, Your Honor. By utilizing the method that they do, all that the patent defines or describes in specifications into the transaction terminal is the place where a user is performing a transaction. And if you look, I think it's helpful to look in the diagrams, the diagrams in the patent, and specifically the appendix at page 38, where there's a depiction of an embodiment of this invention that depicts the transaction terminal. It's a depiction of the financial services network. And then you'll see in that diagram, the transaction terminal is one element of how the method is comprised. How is SCVNGR performing the method? I mean, it may supply the cell phone app and the scanner, but it doesn't supply the point-of-sale terminal. No, it does not, Your Honor. But I submit that the fact that the level-up has, through its arrangements with these various merchants, provided the ability for these merchants to sign on with the level-up application, which results in this method whereby the user can then, with its cell phone, with the scanner, and with the merchant's POS, point-of-sale device combined, that creates the place where the transaction is taking place. If you look at the language in the patent as illustrative of what the transaction terminal is supposed to be, and my brother has picked up on this in a brief, they use the terms ATM and merchant's POS are repeatedly used as illustrative of what the transaction terminal might be. The only limiting language in the patent is that the transaction terminal be the place where the transaction is performed. So if level-up is providing the platform for this transaction to be performed  that they can purchase and download onto their cell phone, can access through a PIN number, and then can enter information as if it were an ATM or a point-of-sale device, and in fact many point-of-sale devices are now nothing more than computers and or... But level-up is not performing the method, is it? Well, respectfully, Your Honor, I believe they are, in that it's level-up that is... I guess the point is level-up doesn't own the point-of-sale terminal. It's the merchant that owns the point-of-sale terminal. Correct, Your Honor, and I'd suggest respectfully that within the language of the patent, there's no limitation that the potential infringer need own the transaction terminal. The fact is, what this patent gets at is a way, it's a unique method to get at what historically was an innocuous financial transaction that a user is performing and allow a third party to communicate with that user messages independent of that transaction, so beyond just a simple receipt that a user receives for his or her financial transaction. What is the message here that's independent of the transaction? It's the loyalty notifications, it's the solicitations. So it's the idea, quite frankly, behind the mobile pay application platform in that a user, such as any individual, performs an innocuous financial transaction at an ATM, at a merchant point-of-sale with his or her cell phone in conjunction with the level-up apparatus. Independent from that transaction, that user then receives a message, such as a loyalty notification, a coupon, any type of solicitation that otherwise was not able to be sent to this user. And that's the motivation for these merchants to sign on with a platform such as level-up, is that it allows them the ability to place targeted solicitations of users as a result of those users performing what was otherwise an independent financial transaction. Isn't there something in your specification that says the whole point of the invention and the 873 patent was to deliver messages to customers that didn't have cell phones? There is an embodiment reference in that patent that talks about reaching folks who are offline. That is correct. Right, and that's why this is such a great invention, because you can now transmit messages to the customer to the transaction terminal because they don't have a cell phone. I would suggest, Your Honor, respectfully, that that embodiment is one of many embodiments listed in the specifications of the patent and is not meant to be limiting on the other embodiments. In fact, if you look at the patent, the paragraph immediately preceding the description of that particular embodiment, reaching users who do not have access to the Internet or a cell phone, immediately preceding that paragraph, there's language discussing the fact that there are multiple embodiments of this invention and one is not meant to be limiting on another. For example, here is one embodiment, and that is to reach folks who are offline. But then the specification goes on and discusses multiple other embodiments addressed to reach folks who, in fact, are online. I would like to briefly, if I may, address the procedural history in this case. This summary judgment motion was filed 10 days after the initial pleadings closed. Let me ask you before you do that, you make something in your brief about this tip information being communicated by the mobile phone, but I don't understand how that communication is over a secure financial network. It's not, right? Well, it's over the same network that the cell phone communicates, that sends the QR code to the scanner. But the answer is it's not over a secure financial network, right? No, the answer is no, it's not over a secure financial network. Okay. The entire transaction is taking place, I would argue, and again refer the court back to page 38. The secure financial network is to the point-of-sale terminal, right? Correct. But I would also, Your Honor, submit that that is not a limitation, that's reading a limitation into the patent, that the transaction terminal wherein the transaction is taking place could encompass elements that are within and without the secure financial network. The point being that the message being received is within the secure network and is sent back to the secure network. Very quickly, on the issue of procedural history, the appellant agreed to the disputed facts, to the facts submitted by Level Up, because those were the facts that were available, those were the facts that were known to the appellant at the time. We had prepared a claims chart, submitted the claims chart to Level Up. They ignored the claims chart. This is a very limited record. I submit that the facts in the record are that we know that the cell phone is involved in the transaction. We know that the cell phone communicates messages and receives messages, that much is acknowledged by both sides and by the court in its decision. What we don't know is how and in what context the cell phone sends and receives those messages. Those are the fact questions, and I submit to the court that there are certainly multiple questions of fact that would preclude summary judgment in this case regarding that very question, how and in what context the cell phone with the Level Up application sends and receives messages. In a customary transaction at a point of sale terminal, I use a credit card. You wouldn't suggest that a credit card would be part of the transaction terminal, right?  Now let's go to this case. I think, as I understand the district court, the district court saw the Level Up app on the cell phone as providing information, just like a credit card is providing information to the transaction terminal, and the transaction terminal collects that information and then communicates it over the financial services network to some server somewhere to complete the transaction. To me, that's the biggest hurdle I see for your case. Why isn't the cell phone with the Level Up app serving the exact same identical role as a credit card in my wallet? Because a user with a credit card cannot communicate a tip, change the amount of the transaction with the credit card. The credit card is scanned into the device. The scanner reads the amount, and that's the amount that's transferred or transmitted to the point of sale. What difference does that make since you agree that the tip is not communicated over a secure financial network? Say again, Your Honor? What difference does that make since you agree that the tip is not being communicated over a secure financial network? Well, I don't think that that limitation is a required permeation of the length of the patent specification. I don't think that the tip, the act of the user with a cell phone having to enter that, communicating that tip into its phone to be sent to the Level Up scanner necessarily has to be, that group of events doesn't necessarily have to be within the secured financial network to be applicable to the 873 patent. I don't understand how the tip analogy or example helps your cause, though. Again, to me, that's nothing more than providing information to what arguably is the transaction terminal. Sure, it's communicating information. But not through the financial services network to that server on the back end. It's communicating information, providing information to the actual transaction terminal, just as my credit card is communicating and providing information to the transaction terminal that's now collecting that and then sending it off. Sure, and then, respectfully, Your Honor, that would be reading a limitation into the Diagram 302 in the specification, which is the transaction terminal that says, the transaction terminal cannot be comprised of elements that fall outside of the secured financial network. I think that wasn't the point of, or that wasn't a restriction that was contemplated by the patent. Right, but we already agree that my credit card is not part of anybody's transaction terminal. You're not going to sue me because I use a credit card. No, yes, absolutely, Your Honor. Okay. Agreed. Okay, Mr. Fine, I'm going to save the rest of your time for a vote here. I will. Thank you, Your Honor. Mr. Carroll. Yes, Your Honor. May it please the Court. I'll venture to say that this is quite an uncommon case to reach this Court, where the patentee is appealing the entry of summary judgment of non-infringement after the patentee failed to submit any evidence whatsoever to the District Court and failed to offer any dispute of material fact in response to what was a very straightforward motion for summary judgment. Before I dig into the merits of it, I just want to address briefly the argument that was made in Mr. Barron's reply brief and also by my brother, that Mr. Barron was somehow denied an ability to conduct discovery in the District Court action and that that somehow translates into disputes of fact that could exist but that Mr. Barron was unable to establish. As Your Honors know from reading the record, that's simply not the case here. And in fact, it's quite the opposite. Mr. Barron's counsel on several occasions affirmatively represented to the District Court that they didn't need any discovery to respond to a non-infringement motion. The facts were publicly available. We're talking about the messaging features of the app. Mr. Barron had every opportunity to investigate those. In his response to the statement of material facts at Appendix 122, Mr. Barron doesn't say anything about needing discovery. He says we accept these facts as accurate. And if and only if the motion for summary judgment is denied and this case then proceeds to discovery, then we expect to conduct some discovery. But at no time did he request any discovery. There was no 50-plus D motion, no formal request for discovery. At oral argument, it was the same representation. We accept these facts as true. There are no disputes here. And Mr. Barron's counsel at A28 in the transcript represented to the Court that they wanted the Court's ruling on this non-infringement motion based on the record that they put forward, and that record included no evidence. Where did the claim construction come from? The claim construction, Your Honor, was a claim construction that we proposed in connection with our motion for summary judgment. We proposed that transaction terminals should be construed to mean, in accordance with the patent and common understanding of transaction terminals, a device that transmits transaction information over a secure financial network to seek authorization for that transaction. We proposed a construction that wasn't opposed at all by Mr. Barron. He didn't propose an alternative construction. He didn't suggest any modification to our construction. Didn't take any issue with it. He argued essentially that the device could be any device. It could be a traditional merchant point-of-sale computer, or it could be a phone or tablet. He's not arguing that now. He's not arguing that the phone is the transaction terminal. No, he's not arguing that now, Your Honor. And that is one of the big issues in this case, is whether the dispute over claim construction is even properly before this court. The district court was never asked to consider whether a transaction terminal was a device or a compilation of multiple devices. They never had a chance to rule on that issue. Do you disagree with that proposition, that a transaction terminal could be a plurality of devices operating together, connected together somehow? That's what the text suggests, right? The examples in the specification refer to singular devices, like POS terminal and ATM terminal, but certainly there's some boilerplate in that it refers to multiple connected devices. And I'd suggest that a merchant POS terminal with multiple connected devices, including a card scanner and a merchant computer and a device for printing out receipts, that probably would fall within someone's understanding of what a transactional terminal is, even within the context of the 873 patent. That's not what they're advocating now. They're advocating that additional devices, like a user's phone, which is not connected in any way, and in fact doesn't communicate in any way with the POS terminal, other than to display a static QR code, could also be considered part of the transaction terminal. So to dig into that point a little bit, and the district court's finding and what we've advocated, is that the phone really is just a proxy for the credit card. It's interesting. I want to point out a portion of the specification of this 873 patent that actually discusses this type of technology. So the level-up phone displays a QR code. We call that a token, a static token. It can have other information encoded in the token, for example, a request for an increased amount on the tip. That's scanned to the POS terminal without any communication at all. There's no response back from the POS terminal to the phone. There's no wireless communication at all. In fact, the POS terminal doesn't even know that the phone is there. As far as the POS terminal is concerned, that scan could have happened off a printed piece of paper card. It doesn't know that it's actually a phone presenting that QR code. The 873 patent in column 4 at lines 28 to 38 actually defines what it means when it refers to a credit card, and when it refers to a credit card in the definition, it's not just saying plastic traditional credit or debit cards. It's also talking about devices, and there's an express discussion of devices that transmit tokens into point-of-sale terminals, like it gives the example of the mobile speed pass, which is a radio frequency device that you scan at the gas pump terminal, and that conveys a token, a user identifier that's not a credit card number, into the terminal. They consider that speed pass expressly within the patent to be a quote-unquote credit card, not part of the transaction terminal. Apple Pay is an example that some people are familiar with. Apple Pay also functions using tokens by conveying a token from the phone into the point-of-sale terminal, and the patent discusses these devices that create tokens and includes them within the express definition of credit card. Credit cards, obviously, as discussed in the patent, are distinct from transaction terminal. So in addition to the arguments we've made in the papers, there are numerous points in the specification that confirm the district court's conclusion. There's no way for a person of ordinary skill in the art, or even any person, to read that patent and conclude that a device that generates a token, a static token, to convey into the transaction terminal is part of that transaction terminal. In other words, your argument is that it has to perform some step in the method, and that the cell phone's not performing a step in the method. Yes, the cell phone is essentially no different than a credit card in that. You're using the phone and the token to perform a financial transaction at the transaction terminal, but you're not using the phone to perform the transaction. Even when the tip feature is involved, that's no different than handing your card to a waiter at a restaurant and saying, I'm in a hurry, please just add 18% when you run this card. That doesn't make your card or your oral instruction part of the transaction terminal. It's actually even similar to the traditional situation, which the waiter takes your card, brings back a receipt, and you add the tip amount in, hand that to the waiter. All that is is an instruction to the waiter to go and add the 18% to the bill before they submit the transaction for authorization. And that's all that's happening there, and that's all that's happening here. The tip is not creating some relationship between the device, which is presenting a static symbol, and the transaction terminal. Isn't the rewards information coming through the mobile phone? All of the messages that LevelUp ever delivers to a user are messages delivered to the mobile phone or to email. You get them on your computer as well. But the key point is that they're all delivered over the public Internet. LevelUp is never delivering any messages over a secure financial transaction network to a point-of-sale terminal Does the message here that's independent of the financial transaction have to be communicated over a secure network? I'm not sure it does. In the claim, Your Honor, it refers to using the same device, the transaction terminal, to submit the transaction over the secure network and to receive and display that message to a user. Now, if you look at the context of the patent, and what the defining characteristic is in a transaction terminal, and there's actually no dispute over this in terms of the construction. Both parties agree that the transaction terminal has to be connected to the secure financial transaction network. What that means, if you look at the figures, and my brother cited figure 3, also in figure 1, you'll see that the transaction terminal is separated from the public Internet by a firewall. That's its connection to the secure financial network. That's what makes it secure. So that means that that transaction terminal is not directly addressable by the public Internet. You can't just send an email or an SMS text directly to that transaction terminal, as the term is used in this patent. It can reach out when it receives a transaction. It can reach out through that firewall and pull any messages in that might be for the user and then deliver them to the user at the transaction terminal. But I'd suggest, Your Honor, in the context of this patent, the only way that a transaction terminal actually could deliver a message is one that comes over that secure financial transaction network because of the firewall and how he's described this transaction terminal. The use of a phone or a computer connected to public Internet is essentially the antithesis of Mr. Barron's invention. As has been pointed out, the whole fundamental purpose and object of this invention was to reach people that don't have access to Internet-connected devices or publicly addressable, directly addressable devices. So to say that any messages delivered by Level Up over the Internet to email or to a user's phone somehow infringed this patent is a hard conclusion to reach. Well, I think the point is that sending the message is not something that a credit card does. So if you look at trying to separate out the mobile phone as being nothing more than a credit card, does something more than that in sending a message? It depends on what definition of credit card you're using, Your Honor. If you're using a traditional definition of credit card, I'd agree with you that the Level Up phone is not a credit card. It's a device that presents a token, and that token relates to the credit card information, allows Level Up to resolve that user's identity into a credit card and make the charge on the back end. But in the context of the patent, they're defining the term credit card to include those types of devices. Given the complete lack of interaction between the POS terminal and the phone, and it's worth reiterating that these are all completely undisputed facts about the operation here, the court construed the claim properly and made the right conclusion that no person of ordinary skill in the art could find or conclude that a user using a device to present a token makes that phone part of the transaction terminal. Okay. Anything else? Nothing further, unless there are any questions. Okay. Thank you, Mr. Kerrigan. Mr. Fine? Thank you, Mr. Green. Two quick points. First, with respect to the credit card issue. The difference between what a credit card does and what a phone with a Level Up application does is this. With a credit card, with a traditional credit card, a user will hand the card to the waiter. The waiter will run the card through the scanner, and the waiter, and then that information is transmitted to the credit card company, to the clearinghouse. With a cell phone with a Level Up application, it is the user that is entering that information and communicating that information directly to the Level Up scanner, which then transmits that information to the clearinghouse. That's a distinction in terms of whether it's the waiter or whether it's the user entering the information. You should not, sitting in the audience, be communicating messages. I apologize, Your Honor. Secondly, the communication system in Figure 3 that transmits the information  to the financial services server, there is no limitation in the patent that says that has to be any particular type of system. It could be through the Internet, through a virtual private network, a dial-up, a traditional dial-up line, or even a phone line. To restrict the nature of the communication system between the transaction terminal and the clearinghouse is to read limitations that don't exist in the patent. Okay. Thank you, Mr. Fine. Thank both counsel. The case is submitted.